ORDERED.

Dated: June 19, 2015

*Caryl E. Delano*
Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

Edward Park and                                            Case No. 9:08-bk-02806-FMD
Keun Yung Park,                                            Chapter 13

     Debtors.
_____/

**MEMORANDUM OPINION AND ORDER DENYING
DEBTORS' MOTION FOR RULE TO SHOW CAUSE WHY SECURED
CREDITOR AND ITS COUNSEL SHOULD NOT BE HELD IN CONTEMPT**
**(Doc. No. 115)**

Debtors' confirmed Chapter 13 plan provided for Debtors to make payments "outside the plan" directly to the holder of the mortgage on their principal residence. After Debtors completed their Chapter 13 plan and received their discharge, the mortgage holder sued them to foreclose the mortgage and to collect on the underlying promissory note. The issue before the Court is whether Debtors' obligation to the mortgage holder was included in their Chapter 13 discharge. The Court concludes that a Chapter 13 plan that proposes to pay a secured creditor directly outside the plan "leaves unaffected" the rights of that creditor under § 1322(b)(2)[1] and does not "provide for the debt" owed to the creditor such that the debt is discharged under § 1328(a). Therefore, Debtors'

---

[1] All statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

Chapter 13 discharge did not include the discharge of their obligations to the mortgage holder. Accordingly, the Court will deny Debtors' Motion for Rule to Show Cause.

## BACKGROUND

Debtors, Edward Park and Keun Yung Park, filed their Chapter 13 bankruptcy case on February 29, 2008. In their bankruptcy schedules, Debtors listed Riverside Bank ("Riverside") as a secured creditor holding a mortgage on their homestead property.[2] Riverside filed a proof of claim for approximately $166,000.[3] The promissory note (the "Note") attached to the proof of claim was dated March 18, 2006, and stated that the maturity date of the Note was March 18, 2009. The mortgage (the "Mortgage") attached to the proof of claim was dated May 18, 2004, and refers to a promissory note dated May 14, 2004, with a maturity date of November 18, 2005. The appropriate box on the Mortgage to indicate that the Mortgage was a "balloon mortgage" with the principal balance due upon maturity was not checked.

Debtors' Chapter 13 plan (the "Plan") listed Riverside as a secured creditor and stated that Riverside would be paid "OUTSIDE the plan."[4] The Plan did not mention or otherwise refer to the maturity date of the Note. The Plan provided for 100% distribution to unsecured creditors, including Debtors' student loan debt, through plan payments to be made over 60 months. Debtors moved for authority to make their mortgage payments directly to Riverside, stating that they "understand the effect of paying secured creditor outside the Chapter 13 Bankruptcy Plan."[5] The Court's order granting the motion authorized Debtors to pay Riverside directly, stating "the automatic stay and discharge injunction are hereby terminated with respect to the Creditor to seek *in rem* relief against

---

[2] Doc. No. 1, p. 15.
[3] Proof of Claim No. 9. (Although the proof of claim included prepetition arrearages, they were not provided for in the Plan.)
[4] Doc. No. 39, p. 1 (emphasis in original).
[5] Doc. No. 46.

the property securing the Creditor's claim."[6] On April 21, 2009, Debtors' Plan was confirmed.[7] Over the course of the next four years, Debtors made all their payments under the Plan, and $107,407.80 was distributed to unsecured creditors.[8] On May 15, 2013, Debtors received their discharge.[9]

Meanwhile, in February 2009, the Federal Deposit Insurance Corporation took over Riverside's operations. In February 2010, the Note and Mortgage were assigned to Multibank 2009-1 RES-ADC Venture, LLC ("Multibank").[10] The Note and Mortgage were then serviced by Quantum Servicing Corporation ("Quantum"). Although the obligation, now owed to Multibank, matured in March 2009, Debtors continued to make monthly payments on the loan after that date, and the payments were accepted by Quantum and Multibank. Ultimately, in August 2013, based upon the maturity of the Note, Multibank declared the loan in default and sent Debtors a written demand for the entire balance then due.[11] In January 2014, Multibank sued Debtors to foreclose on their homestead and to recover the unpaid balance due on the Note.[12]

Debtors filed an Emergency Motion for Rule to Show Cause, alleging that Multibank's suit against them individually violates the discharge injunction.[13] Multibank contends that when a Chapter 13 debtor's plan provides for the debtor to make payments directly to a secured creditor "outside the plan," that claim is not "provided for by the plan" and is not discharged under § 1328(a).[14]

---

[6] Doc. No. 48.
[7] Doc. No. 53.
[8] Doc. No. 110.
[9] Doc. No. 108.
[10] Doc. No. 115, p. 16. Although the note and mortgage originated with Riverside, the Court will hereafter refer to the mortgage holder as Multibank.
[11] Doc. No. 115, pp. 21-22.
[12] Doc. No. 115, pp. 9-22.
[13] Doc. No. 115.
[14] Doc. No. 123.

**DISCUSSION**

*The Chapter 13 Plan*

Under § 1321, only the debtor may propose a Chapter 13 plan. Confirmation of a Chapter 13 plan is governed by two sections of the Bankruptcy Code: § 1322, titled "Contents of plan," and § 1325, titled "Confirmation of plan."

*Section 1322 - Contents of plan*

Section 1322(a)(1) provides that the debtor shall "submit future income" (i.e., make payments) to the Chapter 13 trustee as necessary for the execution of the plan. Payments are made over a three- to five-year time period.[15]

Section 1322(b)(2) permits a plan to

> modify the rights holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured creditors, or leave unaffected the rights of holders of any class of claims.

Section 1322(b)(2)'s prohibition against the modification of claims secured by security interests in real property that is the debtor's principal residence is commonly referred to as the "anti-modification provision." Section 1322(b)(5) permits a plan, notwithstanding the anti-modification provision, to provide for the curing of any default and maintenance of payments on secured and unsecured claims on which the last payment is due after the final plan payment is due.[16] Section 1322(c)(2) excepts short term mortgages from the anti-modification provision; if a debt secured by a mortgage on the debtor's principal residence becomes due *before* the last payment is due under the plan, § 1322(c)(2) allows the plan to provide for the payment of the claim as modified under § 1325(a)(5). In other words, if the last payment on the mortgage on the debtor's principal

---

[15] § 1322(d).
[16] Claims treated pursuant to § 1322(b)(5) are commonly referred to as "long term debt."

residence becomes due before the final plan payment is due, the Chapter 13 debtor may bifurcate the claim into secured and unsecured portions and pay the secured claim through the plan.[17]

### *Section 1325 - Confirmation of plan*

Section 1325(a)(5) provides that the court shall confirm the debtor's plan if, with respect to secured creditors whose claims are provided for by the plan, one of three requirements is met: either the secured creditor has accepted the plan; the secured creditor retains its lien until discharge and the value of the property to be distributed to the claimant is not less than the allowed amount of the claim, which, if paid in periodic payments, shall be in equal monthly amounts; *or* the debtor surrenders the property securing the claim to the creditors. The arrearages on a mortgage claim are deemed to be a distinct claim that may be paid over time—even over the objection of the secured creditor—under §1325(a)(5)(B).[18]

### **The Chapter 13 Debtor's Options**

Together, the provisions of §§ 1322 and 1325 give a Chapter 13 debtor who wishes to retain his home several options with respect to the treatment of a mortgage claim against the property. Under § 1322(b)(2), the debtor may choose to leave the rights of the mortgage holder unaffected; under § 1322(b)(5), if the final payment under the mortgage is due after the last plan payment, the debtor may cure arrearages through plan payments made to the trustee while maintaining postpetition mortgage payments either "through the plan" or directly to the mortgage holder;[19] and, under § 1322(c)(2), if the mortgage loan matures during the plan period, the debtor may modify the

---

[17] *In re Paschen*, 296 F.3d 1203 (11th Cir. 2002), *cert. denied, American General Finance, Inc. v. Paschen*, 537 U.S. 1097, 123 S.Ct. 696, 154 L.Ed.2d 648, 71 USLW 3292, 71 USLW 3411, 71 USLW 3416 (U.S. Dec. 16, 2002).
[18] *Rake v. Wade*, 508 U.S. 464, 473, 113 S.Ct. 2187, 2192-93 (1993).
[19] Chapter 13 debtors in the Tampa and Fort Myers Divisions of the Middle District of Florida whose plans provide to cure the default in payments on their home mortgage are required to pay their postpetition mortgage "inside the plan" through payments made to the Chapter 13 trustee.

loan and pay the secured portion of the loan over the plan period. Under § 1325(a)(5), the Court will confirm a plan containing any of these provisions.

Here, Debtors, notwithstanding the fact that their claim to Multibank may have matured during their plan,[20] specifically chose to pay Multibank "outside the plan," thereby leaving Multibank's rights unaffected by the Plan under § 1322(b)(2).

### *The Chapter 13 Discharge*

As outlined in § 1328, when a Chapter 13 debtor has completed all payments under his plan, he is entitled to a discharge of all debts "provided for by the plan." Section 1328(a)(1) specifically provides that a debt provided for under § 1322(b)(5)—which permits the curing of arrearages and the maintenance of payments on long term debt—is excepted from a debtor's Chapter 13 discharge. In other words, if a debtor's plan provides for the cure of any default and maintenance of payments on long term debt, whether secured or unsecured, the debtor is not discharged from that debt.[21] Section 1328 is silent as to whether a debt "left unaffected" under § 1322(b)(2) is excepted from discharge.

### *Meaning of "provided for by the plan"*

The question in this case is whether the Plan "provided for" Multibank's debt when the Plan's only reference to that debt was that it would be paid by Debtors outside the Plan. The Court concludes that because Debtors chose to leave the rights of Multibank unaffected, the Plan did not provide for Multibank, and the obligation to Multibank is not discharged.

---

[20] The Court makes no finding on the effect of the Mortgage's non-disclosure of the balloon nature of the obligation.
[21] This exception to discharge is repeated in § 1328(c)(1), which excepts from discharge an unsecured "long term debt" provided for under § 1322(b)(5).

In *Rake v. Wade*,[22] the Supreme Court discussed the meaning of the phrase "provided for by the plan" as used in § 1325(a)(5). The Court stated that "[t]he most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in a plan."[23] The Supreme Court then concluded that the plans in two separate Chapter 13 cases provided for the creditor's claims because the debtors had split the creditor's secured claim into two separate claims: one for the underlying debt and the other for the arrearages.[24] The Supreme Court held that the debtors' plans "provided for" the arrearages because the plans "treated" the arrearages as a "distinct" claim to be paid during the life of the debtors' plans according to the payment schedules outlined in the plans.[25]

Debtors rely on *In re Rogers* to support their claim that a plan's mere reference to a claim is sufficient for the plan to have "provided for the claim."[26] In *Rogers*, the debtors' plan proposed to pay the secured mortgage creditor, to whom payments were otherwise current, directly outside the plan under the terms of the mortgage. After the debtors received their discharge, they defaulted in their payments, and the mortgage holder sued to foreclose. After applying the foreclosure sale proceeds to the outstanding balance due under its note, the mortgage holder filed a separate suit against the debtors to recover the deficiency balance. The *Rogers* court held that the creditor's deficiency claim had been discharged and that the debtors were not personally liable for the deficiency.

The *Rogers* court, citing *Rake v. Wade*, adopted a broad view of what it means for a claim to be "provided for by the plan" and held that a plan provides for a debt if the plan "deals with" or

---

[22] 508 U.S. 464, 113 S. Ct. 2187 (1993).
[23] 508 U.S. at 473.
[24] *Id.* The issue in *Rake v. Wade* was whether a debtor was required to pay interest on arrearages being cured through a Chapter 13 plan. The Supreme Court held that interest was required. Thereafter, Congress counteracted the Court's holding by enacting § 1322(e).
[25] *Id.*
[26] 494 B.R. 664 (Bankr. E.D.N.C. 2013).

7

even "refers to" a particular claim.[27] The *Rogers* court held that the mere reference to a claim—even if that reference does nothing more than state that the claim will be paid directly outside the plan—constitutes "provided for by the plan" within the meaning of § 1328(a). And the court held that unless one of the exceptions from discharge listed in § 1328(a) is present, a claim "provided for by the plan," including a claim that is paid by the debtor directly to the creditor outside the plan, is subject to the debtor's discharge.

Taking this analysis one step further, the court in *In re Cramer*,[28] held that a Chapter 13 plan that provided for the debtors to make direct payments to their secured creditor did not provide for the creditor's claim under § 1322(b)(5) because the plan did not provide for the cure of any default. Therefore, the court concluded, the debt was not excepted from discharge under § 1328(a)(1). In other words, the *Cramer* court held that the exception to discharge under § 1328(a)(1) for debts provided for under §1322(b)(5) only applies if the plan proposes to cure a default on the obligation.

But other courts have reached the opposite conclusion. In *In re Huyck*,[29] the court held that claims paid directly to creditors outside the plan are not provided for by the plan. In *Huyck*, the creditor's claim, not secured solely by the debtor's principal residence, was not subject to the anti-modification provision of § 1322(b)(2); the debtors' plan proposed for the debtors to cure mortgage arrearages through their Chapter 13 plan and for the debtors to pay their regular monthly mortgage payments directly to the mortgage holder outside the plan. The *Huyck* court—without discussion of the exception to discharge under § 1328(a)(1) for claims that the plan proposes to "cure and maintain" under §1322(b)(5)—held that while the claim for arrearages was provided for by the plan, the regular monthly principal and interest payments were not.[30] The court specifically found that

---

[27] *Rogers*, 494 B.R. at 667 (citing *Rake v. Wade*, 508 U.S. at 474).
[28] 477 B.R. 736 (Bankr. E.D. Wis. 2012).
[29] 252 B.R. 509 (Bankr. D. Colo. 2000).
[30] *Id.* at 514.

8

one consequence of the debtors' choice to make regular payments to the secured creditor outside the plan was that the debt would not be discharged under § 1328(a).[31]

In *In re Hunt*,[32] the debtor's plan proposed to make payments to the mortgage holder on his principal residence outside the plan. The court held that the mortgage claim would not be discharged upon the completion of payments under the plan. The court, citing *Jones v. Branch Banking & Trust Co.*,[33] held that nothing in the words "curing of any default" in § 1322(b)(5) suggests that § 1322(b)(5) is restricted to circumstances where a default exists on the petition date. The *Hunt* court also points out that the discharge of a debtor's personal liability on a claim secured solely by the debtor's principal residence would be an impermissible modification of the loan in contravention of § 1322(b)(2).

In *Bank of America, N.A. v. Dominguez (In re Dominguez)*,[34] the debtor, whose Chapter 13 plan stated that a mortgage claim was "not included" among the claims governed by the plan, objected to a Notice of Payment Change filed by Bank of America under Fed. R. Bankr. P. 3002.1.[35] The court held that the plan's mere reference to the mortgage claim, a reference which served only to clarify that the mortgage claim was *not* governed by the plan, did not effectuate the exact opposite result and render the claim one that *was* governed by the plan. In other words, the court held that the plan's reference to a claim's being paid directly outside the plan pursuant to contract terms did not support the conclusion that the plan had "provided for" the claim.

---

[31] *Id.*

[32] 2015 WL 128048 (Bankr. E.D.N.C. Jan. 7, 2015).

[33] Case No. 5:09-CV-00419-FL, slip op. at 5-6 (E.D.N.C. Feb. 9, 2010).

[34] Case No. 1:12-cv-24074-RSR (Doc. No. 25) (S.D. Fla. Sept. 24, 2013). The District Court's decision in *Dominguez* is currently on appeal to the Eleventh Circuit Court of Appeals (Case No. 13-14864). As of the date of this memorandum opinion, the briefing in the Eleventh Circuit is not complete.

[35] Rule 3002.1 requires lenders whose claims are secured by a security interest on the debtor's principal residence and are "provided for" under § 1322(b)(5) to file notices of payment changes resulting from changes in the loan's interest rate or an escrow account (*e.g.,* that is maintained for taxes and insurance) adjustment.

This Court concurs with the courts' reasoning in the *Huyck, Hunt,* and *Dominguez* cases. The mere mention of a creditor in a debtor's Chapter 13 plan, without more, does not result in that creditor's claim being "provided for" under the plan. And a Chapter 13 plan that does not modify the rights of a secured creditor under the plan "leave[s] unaffected" the rights of that creditor under § 1322(b)(2). If the rights of a holder of a claim are left unaffected, the claim is not discharged. This is the case notwithstanding § 1328(a)'s silence on whether a debt "left unaffected" under § 1322(b)(2) is excepted from discharge. Finally, even if it were determined that a claim paid "outside the plan" is still "provided for" under the plan, when that claim is "long term debt" and the plan proposes for the debtor to maintain payments, the claim is provided for under § 1322(b)(5) and excepted from discharge under § 1328(a)(1). This is the case, as explained by the court in *Jones v. Branch Banking & Trust Co.*,[36] even if payments are current on the petition date and there is no default to be cured.

Accordingly, for the foregoing reasons, the Debtor's Motion for Rule to Show Cause (Doc. No. 115) is DENIED.

The Clerk's Office is directed to serve a copy of this Order on interested parties via CM/ECF.

---

[36] Case No. 5:09-CV-00419-FL, slip op., at 5-6 (E.D.N.C. Feb. 9, 2010).